## MORLEY *v.* LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY.

ERROR TO THE COURT OF APPEALS OF THE STATE OF NEW YORK.

No. 1. Argued October 14, 17, 1892. — Decided November 14, 1892.

The Court of Appeals of the State of New York having held that a judgment obtained before the passage of the act of the Legislature of that State of June 20, 1879, reducing the rate of interest, (Sess. Laws 1879, 598, c. 538,) is not a " contract or obligation " excepted from its operation under the provisions of § 1, this court accepts that construction as binding here.

The provision in § 10 of Art. 1, of the Constitution of the United States that " no State shall " " pass any " " law impairing the obligation of contracts," does not forbid a State from legislating, within its discretion, to reduce the rate of interest upon judgments previously obtained in its courts ; as the judgment creditor has no contract whatever in that respect with the judgment debtor, and as the former's right to receive, and the latter's obligation to pay exists only as to such an amount of interest as the State chooses to prescribe as a penalty or liquidated damages for the nonpayment of the judgment.

A state statute reducing the rate of interest upon all judgments obtained within the courts of the State does not, when applied to one obtained previous to. its passage, deprive the judgment creditor of his property without due process of law, in violation of the provisions of § 1 of the Fourteenth Amendment to the Constitution of the United States.

THIS case was first argued on the 23d and 24th days of October, 1888, at October term, 1888. *Mr. Lucien Birds-*

*eye* for plaintiff in error. *Mr. E. S. Rapallo* for defendant in error. On the 29th of the same month it was ordered for reargument.

It was ordered continued at that term, and also at October terms 1889, 1890 and 1891. At the present term it was argued on the 14th and 17th days of October. The case then made is stated in the opinion.

*Mr. William Ford Upson* (with whom was *Mr. William Forse Scott* on the brief) and *Mr. George Hoadly* for plaintiff in error.

*Mr. Edward S. Rapallo* for defendant in error.

Mr. JUSTICE SHIRAS delivered the opinion of the court.

John S. Prouty, of the city and State of New York, was a holder and owner of certain preferred and guaranteed stock of the Michigan Southern and Northern Indiana Railroad Company. This stock was issued in the city of New York, in the year 1857, and the guaranteed dividends and interest were to be there paid. Subsequently, it being alleged that the said company was in arrears of dividends and interest due Mr. Prouty as holder and owner of its stock, an action was commenced by him in the Supreme Court of the State of New York in and for the city and county of New York, special term, upon the equity side, to compel the said company specifically to perform its contract and agreement with him. During the pendency of the action, evidence was produced tending to show that, after the commencement of the same, the said company was, with various other companies, merged or consolidated into the Lake Shore and Michigan Southern Railway Company, the present defendant in error. Upon this evidence the consolidated company was permitted to be brought in as defendant by supplemental complaint. In pursuance of this complaint, after a trial at special term, the Supreme Court, on motion, decreed that the railroad company should specifically perform all and every act and acts necessary and proper for

the specific performance of the contract and agreement in the findings and decisions of the special term set forth, and made, as therein stated, with the plaintiff as holder and owner of the stock in question, and to pay the plaintiff the amount of the arrears as dividends, being $27,426.67 with interest, the whole aggregating $53,184.88; and also decreed that immediately after service of a copy of the judgment the company should declare and make payable, and pay out of any of the net earnings of the company, the said sum of $53,184.88 together with interest thereon from the entry of said judgment, and that in case of failure, within thirty days after service of the judgment, to pay the said sum of $53,184.88, and said interest, the plaintiff should have execution therefor against the defendant. On appeal by the defendant from this decree to the general term of the Supreme Court, and afterwards to the Court of Appeals, the decree was affirmed, and was entered in the office of the clerk of the county of New York on the 26th day of January, 1878. The proceedings in the action prior to this decree do not appear in the record before this court, but such facts as are not shown by the record, and which deserve to be stated here, are gathered from the briefs and data therein cited, and seem to be undisputed.

The directions of the said decree not being complied with, on the 21st day of May, 1881, an execution was duly issued for the amount of the decree, with interest, and thereupon the defendant company paid to the sheriff the said amount, with interest at the rate of seven per cent per annum up to January 1, 1880, and interest at the rate of six per cent per annum from January 1, 1880, to May 21, 1881, the time of such payment, and demanded that the execution be returned satisfied. It would seem that the reason for the refusal to pay seven per cent interest after January 1, 1880, was the passage of the act of June 20, 1879, of the legislature of the State of New York, changing the rate of interest upon the loan or forbearance of any money, goods, or things in action from seven per cent to six per cent per annum, which act, upon January 1, 1880, began to take effect. The sheriff and plaintiff received the said sum on account and demanded an additional amount,

which would be the balance due upon computing the interest at the rate of seven per cent per annum for the whole time. Thereupon, the railroad company, by its attorney, obtained a rule to show cause why the said execution should not be returned fully satisfied, or why the said judgment should not be discharged and marked satisfied of record, or why the sheriff should not be forever enjoined from making any levy or sale under said execution. This application was, at a special term of the Supreme Court of New York, denied. The general term of the same court afterwards affirmed the denial of this motion by the special term. An appeal was then taken from the said general term of the said Supreme Court to the Court of Appeals, where the decision of the Supreme Court was reversed, and that court was ordered to grant the motion. (95 N.Y. 428 and 667.)

The complainant thereupon, by a writ of error, brought the matter from the Court of Appeals, which is the highest court having jurisdiction thereof in the State of New York, to this court.

In considering this case we shall find it convenient to have before us certain sections of the statutes of New York, namely:

Revised Statutes, Part II, c. IV, tit. 3; enacted December 4, 1827, and taking effect January 1, 1830 (1 Rev. St. 1st ed. 771)..

"SEC. 1. The rate of interest upon the loan or forbearance of any money, goods, or things in action shall continue to be seven dollars upon one hundred dollars for one year, and after that rate for a greater or less sum, or for a longer or shorter time."

Laws 1879, 598, c. 538. (An act to amend the title containing the section above quoted, passed June 20, 1879, and taking effect January 1, 1880.)

"SEC. 1. The rate of interest upon the loan or forbearance of any money, goods, or things in action shall be six dollars upon one hundred dollars for one year, and after that rate for a greater or less sum, or for a longer or shorter time; but

nothing herein contained shall be so construed as to in any way affect any contract or obligation made before the passage of this act.

"SEC. 2. All acts or parts of acts inconsistent with the provisions of this act are hereby repealed.

"SEC. 3. This act shall take ' effect on the first day of January, 1880."

Laws 1877, 468, 477, c. 417.   (An enactment of June 2, 1876, taking effect September 1, 1877.)

" SEC. 1211.  A judgment for a sum of money, rendered in a court of record, or not of record, or a judgment rendered in a court of record directing the payment of money, bears interest from the time when it is entered."

The first question we have to consider is the effect to be given to the saving clause contained in the first section of the act of June 20, 1879, which provides that nothing therein contained shall be so construed as to in any way affect any contract or obligation made before the passage of that act. This question is answered for us by the decision of the Court of Appeals of New York in this very case, holding that this saving clause is not applicable in the case of a judgment like the plaintiff's.   In *Louisiana* v. *Pilsbury*, 105 U. S. 278, 294, this court, speaking by Mr. Justice Field, says : "Whether such a construction [by judicial decisions upon a clause of the state constitution] was a sound one, is not an open question. . . . ' The exposition given by the highest tribunal of the State must be taken as correct so far as contracts made under the act are concerned. . . . The construction, so far as contract obligations incurred under it are concerned, constitutes a part of the law as much as if embodied in it.   So far does this doctrine extend, that when a statute of two States, expressed in the same terms, is construed differently by the highest courts, they are treated by us as different laws, each embodying the particular construction of its own State, and enforced in accordance with it in all cases arising under it."
" The rule of construction adopted by the highest court of the

State, in construing their own constitution, and one of their own statutes in a case not involving any question reëxaminable in this court under the twenty-fifth section of the judiciary act, must be regarded as conclusive in this court." *Provident Institution* v. *Massachusetts*, 6 Wall. 611, 630. "The construction given to a statute of a State by the highest judicial tribunal of such State is regarded as a part of the statute, and is as binding upon the courts of the United States as the text." *Leffingwell* v. *Warren*, 2 Black, 599, 603. The meaning of a state statute, declared by the highest court of a State, is conclusive upon this court. *Randall* v. *Brigham*, 7 Wall. 523, 541. If, then, the law as enacted by the legislature, and construed by the state judiciary, will be the law of the State, it follows that, as to the proper construction of the statute and as to what should be regarded as among its terms, no Federal question could arise. The most that could be claimed would be that, although the statute of the State was unobjectionable, yet the state court had erroneously construed it. This would constitute a purely judicial error, involving no question of the validity of the law; which latter question alone is, by the plainest possible terms of the Constitution and judiciary act, subject to investigation here. Assuming, then, that the statute in question was correctly construed by the New York court, our only inquiry must be as to the validity of the statute itself, as construed by the state court. Did, then, the law that changed the rate of interest thereafter to accrue on a subsisting judgment, infringe a contract within the meaning of the Constitution of the United States?

Before we state the conclusions reached by this court, the contention on behalf of the plaintiff in error may be briefly stated, as follows:

The judgment was based on a contract, which, as soon as it became a cause of action by the failure of the defendant to comply with its terms, began, under the then existing law of the State, to draw interest at the rate of seven per cent per annum, and, when merged into judgment, was entitled to draw interest at that rate until paid; that such judgment was itself a contract in the constitutional sense; and that the in-

terest accruing and to accrue was as much a part of the contract as the principal itself, and equally within the protection of the Constitution.

Interest on a principal sum may be stipulated for in the contract itself, either to run from the date of the contract until it matures, or until payment is made; and its payment in such a case is as much a part of the obligation of contract as the principal, and equally within the protection of the Constitution. But if the contract itself does not provide for interest, then, of course, interest does not accrue during the running of the contract, and whether, after maturity and a failure to pay, interest shall accrue, depends wholly on the law of the State, as declared by its statutes. If the State declares that, in case of the breach of a contract, interest shall accrue, such interest is in the nature of damages, and, as between the parties to the contract, such interest will continue to run until payment, or until the owner of the cause of action elects to merge it into judgment.

After the cause of action, whether a tort or a broken contract, not itself prescribing interest till payment, shall have been merged into a judgment, whether interest shall accrue upon the judgment is a matter not of contract between the parties, but of legislative discretion, which is free, so far as the Constitution of the United States is concerned, to provide for interest as a penalty or liquidated damages for the non-payment of the judgment, or not to do so. When such provision is made by statute, the owner of the judgment is, of course, entitled to the interest so prescribed until payment is received, or until the State shall, in the exercise of its discretion, declare that such interest shall be changed or cease to accrue. Should the statutory damages for non-payment of a judgment be determined by a State, either in whole or in part, the owner of a judgment will be entitled to receive and have a vested right in the damages which shall have accrued up to the date of the legislative change; but after that time his rights as to interest as damages are, as when he first obtained his judgment, just what the legislature chooses to declare. He has no contract whatever on the subject with the defendant in the judgment,

and his right is to receive, and the defendant's obligation is to pay, as damages, just what the State chooses to prescribe.

It is contended on behalf of the plaintiff in error, as stated above, that the judgment is itself a contract, and includes within the scope of its obligation the duty to pay interest thereon. As we have seen, it is doubtless the duty of the defendant to pay the interest that shall accrue on the judgment, if such interest be prescribed by statute, but such duty is created by the statute, and not by the agreement of the parties, and the judgment is not itself a contract within the meaning of the constitutional provision invoked by the plaintiff in error. The most important elements of a contract are wanting. There is no *aggregatio mentium.* The defendant has not voluntarily assented or promised to pay. " A judgment is, in no sense, a contract or agreement between the parties." *Wyman* v. *Mitchell,* 1 Cowen, 316, 321. In *McConn* v. *New York Central, &c. Railroad,* 50 N. Y. 176, 180, it was said that "a statute liability wants all the elements of a contract, consideration and mutuality, as well as the assent of the party. Even a judgment founded upon a contract is no contract." In *Bidleson* v. *Whytel,* 3 Burrow, 1545, it was held by Lord Mansfield, after great deliberation, and after consultation with all the judges, that "a judgment is no contract, nor can be considered in the light of a contract: for *judicium redditur in invitum.*" To a *scire facias* on a judgment, entered in 13 Car. II, the defendant for plea alleged that the contract upon which recovery was had was usurious, to which plea the plaintiff demurred, saying that judgments cannot be void upon such a ground, since by the judgment the original contract which is supposed to be usurious is determined, and cited the case of *Middleton* v. *Hall,* (Gouldsb. 128; *S. C. sub nom. Middleton* v. *Hill,* Cro. Eliz. 588). And according to this the plea was ruled bad, and judgment given for the plaintiff. *Rowe* v. *Bellaseys,* 1 Siderfin, 182. "To a *scire facias* on a judgment by confession, the defendant pleaded that the warrant of attorney was given on an usurious contract. And upon demurrer it was held that this was not within the statute 12 Anne [of usury], or to be got at

this way, for this is no contract or assurance, a judgment being *redditum in invitum.*" *Bush and others* v. *Gower,* 2 Strange, 1043. In *Louisiana* v. *New Orleans,* 109 U. S. 285, 288, in which it was contended on behalf of an owner of a judgment that it was a contract, and within the protection of the Federal Constitution as such, it was said that "the term 'contract' is used in the Constitution in its ordinary sense, as signifying the agreement of two or more minds, for considerations proceeding from one to the other, to do, or not to do, certain acts. Mutual assent to its terms is of its very essence." Where the transaction is not based upon any assent of parties it cannot be said that any faith is pledged with respect to it, and no case arises for the operation of the constitutional prohibition. *Garrison* v. *City of New York,* 21 Wall. 196, 203. It is true that in *Louisiana* v. *New Orleans,* and in *Garrison* v. *City of New York,* the causes of action merged in the judgments were not contract obligations; but in both those cases, as in this, the court was dealing with the contention that the judgments themselves were contracts *proprio vigore.*

A large portion of the able argument in behalf of the plaintiff in error was directed to a discussion of the question how far the legislature may change remedies on existing contracts, without impairing their obligation in the constitutional sense, and our special attention was asked to the case of *Gunn* v. *Barry,* 15 Wall. 610. That was a case wherein this court held that, as respects a creditor who had obtained by his judgment a lien on the land which a former exemption secured to him while the new one destroyed it, the law creating the new exemption impaired the obligation of a contract, and was unconstitutional and void. The doctrine of that and similar cases does not seem to be applicable to the present case. Much discussion has been had in many cases, in this and other courts, in the attempt to fix definitely the line between the alterations of the remedy which are deemed legitimate, and those which, under the form of modifying the remedy, impair substantial rights. But if we are right in our view of the nature of the present case, we are not called upon to review or consider those cases. If it be true, as we have

endeavored to show, that interest allowed for non payment of judgments is in the nature of statutory damages, and if the plaintiff in the present case has received all such damages which accrued while his judgment remained unpaid, there is no change or withdrawal of remedy. His right was to collect such damages as the State, in its discretion, provided should be paid by defendants who should fail to promptly pay judgments which should be entered against them, and such right has not been destroyed or interfered with by legislation. The discretion exercised by the legislature in prescribing what, if any, damages shall be paid by way of compensation for delay in the payment of judgments is based on reasons of public policy, and is altogether outside the sphere of private contracts.

The well settled rule that in a suit on this New York judgment in another State the interest recoverable is that allowed by the latter, points to the conclusion that such interest is in the nature of damages, and does not arise out of any contract between the parties; for, as is said by Chief Justice Marshall in *Ogden* v. *Saunders*, 12 Wheat. 213, 343, "if the law becomes a part of the contract, change of place would not expunge the condition. A contract made in New York would be the same in any other State as in New York, and would still retain the stipulation originally introduced into it."

The further contention of the plaintiff in error, that he has been deprived of his property without due process of law, can be more readily disposed of. If, as we have seen, the plaintiff has actually received on account of his judgment all that he is entitled to receive, he cannot be said to have been deprived of his property; and whether or not a statutory change in the rate of interest thereafter to accrue on the judgment can be regarded as a deprivation of property, the adjudication of the plaintiff's claims by the courts of his own State must be admitted to be due process of law. Nor are we authorized by the judiciary act to review this judgment of the state court, because this judgment refuses to give effect to a valid contract or because such judgment in its effect impairs the obligation of a contract. If we did, every case decided in the state courts could be brought here, when the party setting up a

contract alleged that the court took a different view of its obligation from that which he held. *Knox v. Exchange Bank,* 12 Wall. 379, 383.

The result of these views is, that we find no error in the record, and that the judgment of the New York Court of Appeals is accordingly *Affirmed.*

MR. JUSTICE HARLAN, with whom concurred MR. JUSTICE FIELD and MR. JUSTICE BREWER, dissenting.

In an action brought in the Supreme Court of New York by John S. Prouty against the Lake Shore and Michigan Southern Railway Company and others to compel the specific performance of a certain contract, it was adjudged, January 26, 1878, that the company pay the plaintiff out of its net earnings $53,184.88, "together with interest thereon *from the entry of said judgment.*" It was also adjudged that if the company, within a time specified, failed to pay to the plaintiff the above principal sum "and such interest," the plaintiff might have execution therefor against the defendant. Judgment was also entered in plaintiff's favor for $1437.73 for his costs and allowance in the action.

By the statutes of New York, in force when this judgment was rendered, seven per cent was the legal rate of interest. It was provided that "every judgment shall bear interest from the time of perfecting the same," that is, "from the time when it is entered." Laws of 1844, c. 324; Rev. Stats. N. Y. Pt. II, c. 4, tit. 3, p. 771, 1st ed.; Laws of 1877, c. 417, pp. 468, 477. It was also provided that "whenever a judgment shall be rendered and execution shall be issued thereon, it shall be lawful to direct, upon such execution, the collection of interest upon the amount recovered, from the time of recovering the same *until such amount be paid.*"

Execution was issued on the above judgment, and, by written endorsement upon it, the sheriff was directed to collect thereon $54,622.61 (which was the aggregate amount, principal and costs, adjudged in favor of the plaintiff,) with interest at seven per cent from the date of the judgment. Was

it competent for the legislature, by the act of 1879, which took effect January 1, 1880, to reduce to six per cent the interest collectible, *after its passage*, on the above judgment? I think it was not, and, therefore, dissent from the opinion and judgment of the court.

It may be conceded, for the purposes of this case, that a judgment, into which is merged a contract that does not itself provide for interest, will bear interest as may be prescribed by the statute in force when the judgment is entered, whatever may have been the rate of interest upon judgments at the time such contract was made. But it does not follow, when interest is given by a judgment in conformity with the statutes in force when it is rendered, that the right thus acquired can be affected or taken away by subsequent legislation. The difficulty is not met by saying that the allowance of interest upon a *judgment* is wholly within legislative discretion, and not a matter of agreement between the parties. Rights may be acquired by legislation that cannot be taken away by subsequent enactments. When the judgment in question was rendered the plaintiff was entitled, by statute, to require the collection of interest upon the amount recovered, from the time of the recovery " until such amount be paid." And that right was asserted in the mode prescribed, when the plaintiff by his endorsement on the execution required the sheriff to collect the amount adjudged with seven per cent interest till paid. Although the contract upon which the judgment was based did not, in terms, provide for interest upon any judgment rendered for its specific performance, it was necessarily implied, in such contract, that the party suing for a breach of it, or suing to compel its specific performance, should receive, from the other party, the amount judicially ascertained to be due, with such interest, if any, as the law allowed, and as the court legally awarded, at the time judgment might be entered. Indeed, it is an implied condition of every agreement that the party failing to comply with its terms shall be liable to the party injured in such sum as the law will give him at the time the default is adjudged.

Mr. Justice Story says : " Express contracts are, where the

terms of the agreement are openly avowed and uttered at the time of the making of it. Implied contracts are such as reason and justice dictate from the nature of the transaction, and which, therefore, the law presumes that every man undertakes to perform. The Constitution makes no distinction between the one class of contracts and the other. It then equally embraces and applies to both. Indeed, as by far the largest class of contracts in civil society, in the ordinary transactions of life, are implied, there would be very little object in securing the inviolability of express contracts if those which are implied might be impaired by state legislation. The Constitution is not chargeable with such folly or inconsistency." 2 Story, Const. § 1377. The principle was applied in *Fisk* v. *Jefferson Police Jury*, 116 U. S. 131, 134, where this court, speaking by Justice Miller, said: "The vice of the argument of the Supreme Court of Louisiana is in limiting the protecting power of the constitutional provision against impairing the obligation of contracts to express contracts, to specific agreements, and in rejecting that much larger class in which one party having delivered property, paid money, rendered service, or suffered loss at the request of or for the use of another, the law completes the contract by implying an obligation on the part of the latter to make compensation. This obligation can no more be impaired by a law of the State than that arising on a promissory note."

This principle was illustrated in another case in this court. I allude to *McCracken* v. *Hayward*, 2 How. 608, 613. The question there was as to the validity of a statute of Illinois, prohibiting property from being sold on execution for less than two-thirds of the valuation made by appraisers, pursuant to the directions contained in the law. That statute was held to impair the obligation of contracts made before its passage, and to be inoperative upon executions issuing on judgments founded on such contracts. This court said: "The obligation of the contract between the parties in this case was to perform the promises and undertakings contained therein; the right of the plaintiff was to damages for the breach thereof, to bring suit and obtain a judgment, to take out and prosecute an exe-

cution against the defendant till the judgment was satisfied, pursuant to the existing laws of Illinois. These laws giving these rights were as perfectly binding on the defendant, and as much a part of the contract, as if they had been set forth in its stipulations in the very words of the law relating to judgments and executions. If the defendant had made such an agreement as to authorize a sale of his property, which should be levied on by the sheriff, for such price as should be bid for it at a fair public sale on reasonable notice, it would have conferred a right on the plaintiff which the Constitution made inviolable; and it can make no difference whether such right is conferred by the terms or law of the contract."

A case in point is *Cox* v. *Mailatt*, 36 N. J. Law, (7 Vroom,) 389. The principal question there, as stated by the court, was, "whether after a judgment has been obtained, which carries a certain rate of interest under the then existing law, a change of that law by a subsequent statute, increasing or diminishing the former rate of interest, will affect the amount that can be collected under execution upon such judgment." The court said: "The effect of a judgment is to fix the rights of the parties thereto by the solemn adjudication of a court having jurisdiction. How those rights can be affected by any subsequent legislation is not apparent. This contract of the highest authority cannot be disturbed so long as it remains unreversed and unsatisfied. Changing the rate of interest does not affect existing contracts or debts due prior to such enactment, whether they be evidenced by statute, by judgment, or by agreement of the parties." After referring to several cases, the court proceeds: "It will be seen that these cases are decided on the principles above stated, that the parties' rights are fixed by the judgment of the court, and the judgment carries with it its incidents, equally determined and all relating to the date of its entry." It is of no consequence, in the present case, that the judgment, although calling for interest on the amount adjudged, did not specify the rate of interest. The statute, then in force, fixed the rate, and, as said in *Amis* v. *Smith*, 16 Pet. 303, 311, interest upon

a judgment, secured by positive law, is "as much a part of the judgment as if expressed in it."

It seems to me that the law made it a part of the contract upon which Prouty's judgment was founded, that for any breach of it, or for any failure to perform it by the other party, he should be entitled to sue and to have judgment for such sum, whether principal or interest, as the law, *at the time of judgment*, entitled him to demand. The statute in question took away his right to receive a part of the amount which a court, having full jurisdiction of the subject-matter and of the parties, adjudged to be due him, and, therefore, impaired the obligation of the contract.

If the statute in question is constitutional, then it was competent for the legislature, not simply to reduce the interest upon unsatisfied judgments previously rendered, but to take away the right to all interest after its passage. Indeed, I do not see why, under the reasoning of the court, the legislature might not, after the judgment was rendered, have forbidden the collection of any interest whatever upon it. If it be said that the right to interest, at seven per cent, had become established, up to the passage of the last act, and could not be affected by its provisions, with equal force it could be said that the right to interest from the entry of the judgment, until the payment of the principal, was established by the judgment. Nor do I see why, under the principles of the opinion, it was not competent for the legislature to have increased the rate of interest, and thus compelled the defendant to pay more than it was bound to pay when the judgment was rendered.

Look at the question in another aspect. Suppose, by the law in force when a judgment is rendered, the plaintiff is entitled to execution upon it. If the legislature, subsequently, for the purpose of favoring debtors requires the return of all outstanding executions, and forbids any execution upon judgments or decrees for money, to be issued for twelve months, when the law, at the date of the judgment, authorized an execution to be issued in ten days after judgment, could not such legislation, under the principles of the decision in this

case, be sustained as not impairing the obligations of contracts? Those who would seek to sustain legislation of that character need only say that, as the right to execution upon a judgment for money was not given by the agreement of the parties, but by the statute regulating executions, it was within legislative discretion to modify the law in force when the judgment was rendered, in respect to the mode of enforcing the judgment. I do not think that such an argument would be heeded. Yet, I take leave to say, with all respect for the opinions of others, that it ought to prevail, in the case supposed, if it be true, as is now held, that it is competent for the legislature, consistently with the contract clause of the Constitution, to declare that a party, adjudged by a court of competent jurisdiction, in a case *ex contractu*, to pay a given sum with interest until paid, at the rate then established, shall not be required to perform that judgment in all of its parts, but may go acquitted by paying less interest than that so fixed both by the existing law and by the judgment.

There is still another view of the case which, in my opinion, is conclusive against that taken by the court. If the rights of the parties as established by the judgment were not protected by the clause of the Constitution forbidding the passage of State laws impairing the obligations of contracts, was not the right of Prouty to collect the sum, principal and interest, awarded him by the judgment, a right of property, of which he could not be deprived by legislative enactment? Could the legislature have taken from him the right to collect the principal sum found to be due from the railroad company? Clearly not, if any effect whatever is to be given to that clause of the Fourteenth Amendment declaring that no State shall deprive any person of property without due process of law. But if the judgment, as respects the principal sum, was property of which Prouty could not be arbitrarily deprived, why is not the interest which the judgment, in conformity with law, awarded to him, equally property, and entitled to like protection? In *Louisiana* v. *Mayor of New Orleans*, 109 U. S. 285, 289, 291, it was held that a judgment against a municipal

corporation for damages caused by a mob was not within the protection of the contract clause of the Constitution. But the court conceded that such judgments, "though founded upon claims to indemnity for unlawful acts of mobs or riotous assemblages, are property in the sense that they are capable of ownership and may have a pecuniary value." It, however, held that the Fourteenth Amendment did not apply to that case, for the reason that, as the judgments continued an existing liability against the city, the relators could not be said to have been deprived of them. In that case, Mr. Justice Bradley concurred in the judgment on a special ground, namely, " that remedies against municipal bodies for damages caused by mobs, or other violators of law unconnected with the municipal government, are purely matters of legislative policy, depending on positive law, which may at any time be repealed or modified, either before or after the damage has occurred, and the repeal of which causes the remedy to cease." But he, also, said : " An ordinary judgment of damages for a tort, rendered against the person committing it, in favor of the person injured, stands upon a very different footing. Such a judgment is founded upon an absolute right, and is as much an article of property as anything else that a party owns; and the legislature can no more violate it without due process of law than it can any other property. To abrogate the remedy for enforcing it, and to give no other adequate remedy in its stead, is to deprive the owner of his property within the meaning of the Fourteenth Amendment. The remedy for enforcing a judgment, is the life of a judgment, just as much as the remedy for enforcing a contract is the life of the contract. Whilst the original Constitution protected only contracts from being impaired by State law, the Fourteenth Amendment protects every species of property alike, except such as in its nature and origin is subject to legislative control."

In my opinion, the right which a party has by a judgment for money — at least where the cause of action is *ex contractu* — to collect the sum awarded thereby, with interest until paid, at the rate then established by law, is a right of property of which he cannot be deprived by mere legislative enactment,

even to the extent of reducing the interest collectible under such judgment.

I am authorized by MR. JUSTICE FIELD and MR. JUSTICE BREWER to say that they concur in this opinion.