IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

R.J. REYNOLDS TOBACCO COMPANY,

     Appellant,

v.

LYANTIE TOWNSEND, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF FRANK TOWNSEND,

     Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED

CASE NO. 1D14-4147

_____/

Opinion filed April 9, 2015.

An appeal from the Circuit Court for Alachua County.
Victor L. Hulslander, Judge.

Charles F. Beall, Jr., Larry Hill of Moore, Hill & Westmoreland, P.A., Pensacola; Robert B. Parrish, Charles M. Trippe, Jr., David C. Reeves, and Jeffrey A. Yarbrough of Moseley, Prichard, Parrish, Knight & Jones, Jacksonville, for Appellant.

Steven Brannock, Celene H. Humphries, Tracy S. Carlin, and Tyler K. Pitchford of Brannock & Humphries, Tampa; Gregory D. Prysock and Katherine M. Massa of Morgan & Morgan , P.A., Jacksonville; Keith R. Mitnik and John W. Dill of Morgan & Morgan, Orlando, for Appellee.

ROBERTS, J.

The Appellant, R. J. Reynolds Tobacco Company, appeals an order entered by the trial court that denied its motion to determine the interest rate payable on judgment. The Appellant argued that the 2011 amendment to section 55.03 applied to any post-judgment interest accrued after the date the 2011 amendment became effective. The trial court disagreed and found that the 2010 version of section 55.03 in place at the time of the final judgment was entered provided that the 2010 post-judgment rate would apply until the judgment was satisfied. We agree with the Appellant.

## I. FACTS

On April 21, 2010, a final judgment was entered awarding the Appellee, Lyantie Townsend, $5,508,000.00 in compensatory damages and $40,800,000.00 in punitive damages. The total sum of $46,308,000.00 would bear interest at a rate of 6% per annum from April 29, 2010. In 2012, an amended final judgment was entered awarding Townsend $5,508,000.00 in compensatory damages and $20,000,000.00 in punitive damages. The trial court ordered that the total sum of $25,508,000.00 would "bear interest as provided by law from April 29, 2010." The Appellant then filed a motion asking the trial court to determine the rate of interest payable on the judgment. The Appellant argued that the rate of post-judgment interest that should apply to the interest accrued after the effective date of the 2011

amendment to section 55.03 should be the interest provided for in that amendment. On August 15, 2014, the trial court entered an order denying the Appellant's motion and found that the 2011 amendment to the interest rate statute did not contain any language indicating a clear intent for its provision to apply to judgments entered prior to its enactment.

## II. HISTORY OF THE STATUTE

To understand the Legislature's purpose in amending section 55.03, it is necessary to examine the history of the statute. The first statute governing post-judgment interest rates was enacted in 1866. See Laws 1866, c. 1562, §1. It provided that all judgments would bear interest at an annual rate of eight percent. See Laws 1866, c. 1562, §1. Between 1866 and 1994, the statute was amended numerous times but the post-judgment interest rate remained a fixed rate. In 1994, the post-judgment interest rate changed to a variable rate that would be set by the State Comptroller based on the federal discount rate. The 1994 version provided that:

> (1) On December 1 of each year beginning December 1, 1994, the Comptroller of the State of Florida shall set the rate of interest that shall be payable on judgments or decrees for the year beginning January 1 by averaging the discount rate of the Federal Reserve Bank of New York for the preceding year, then adding 500 basis points to the averaged federal discount rate. The Comptroller shall inform the clerk of the courts and chief judge for each judicial circuit of the rate that has been established for the upcoming year. The initial interest rate established by the Comptroller shall take effect on January 1, 1995, and the interest rate established by the Comptroller in subsequent years

3

shall take effect on January 1 of each following year. Judgments obtained on or after January 1, 1995, shall use the previous statutory rate for time periods before January 1, 1995, for which interest is due and shall apply the rate set by the Comptroller for time periods after January 1, 1995, for which interest is due. Nothing contained herein shall affect a rate of interest established by written contract or obligation.

(2) Any process, writ, judgment, or decree which is directed to the sheriffs of the state to be dealt with as execution shall bear, on the face of the process, writ, judgment, or decree, the rate of interest which it shall accrue from the date of the judgment until payment.

§ 55.03, Fla. Stat. (1995).

In 1998, the Legislature again amended the statute. Subsections one and two remained the same, but two new subsections were added and took effect on October 1, 1998. Subsections three and four provided that:

(3) The interest rate established at the time a judgment is obtained shall remain the same until the judgment is paid.

(4) A sheriff shall not be required to docket and index or collect on any process, judgment, or decree, described in subsection (2), and entered after the effective date of this act, unless such process, writ, judgment, or decree indicates the rate of interest. For purposes of this subsection, if the process, writ, judgment, or decree refers to the statutory rate of interest described in subsection (1), such reference shall be deemed to indicate the rate of interest.

§ 55.03(3) & (4), Fla. Stat. (1998).

The statute was amended again in 2003. The only difference in this amendment was the language in subsection one, which now provided:

(1) On December 1 of each year, the Chief Financial Officer shall set the rate of interest that shall be payable on judgments or decrees for the

4

year beginning January 1 by averaging the discount rate of the Federal Reserve Bank of New York for the preceding year, then adding 500 basis points to the averaged federal discount rate. The Chief Financial Officer shall inform the clerk of the courts and chief judge for each judicial circuit of the rate that has been established for the upcoming year. The interest rate established by the Chief Financial Officer shall take effect on January 1 of each following year. Judgments obtained on or after January 1, 1995, shall use the previous statutory rate for time periods before January 1, 1995, for which interest is due and shall apply the rate set by the Chief Financial Officer for time periods after January 1, 1995, for which interest is due. Nothing contained herein shall affect a rate of interest established by written contract or obligation.

§ 55.03(1), Fla. Stat. (2003). Subsection three remained the same. § 55.03(3), Fla. Stat. (2003). This is the version of the statute in effect at the time the final judgment was entered in 2010.

The statute was most recently amended in 2011. The Legislature amended subsection three to provide that the interest rate would fluctuate annually. This amendment took effect on July 1, 2011, and that version remains in effect currently. As amended in 2011, section 55.03 now provides that:

(1) On December 1, March 1, June 1, and September 1 of each year, the Chief Financial Officer shall set the rate of interest that shall be payable on judgments or decrees for the calendar quarter beginning January 1 and adjust the rate quarterly on April 1, July 1, and October 1 by averaging the discount rate of the Federal Reserve Bank of New York for the preceding 12 months, then adding 400 basis points to the averaged federal discount rate. The Chief Financial Officer shall inform the clerk of the courts and chief judge for each judicial circuit of the rate that has been established for the upcoming quarter. The interest rate established by the Chief Financial Officer shall take effect on the first day of each following calendar quarter. Judgments obtained on or after January 1, 1995, shall use the previous statutory rate for time periods before January 1, 1995, for which interest is due and shall apply the rate

5

set by the Chief Financial Officer for time periods after January 1, 1995, for which interest is due. Nothing contained herein shall affect a rate of interest established by written contract or obligation.

(2) Any judgment for money damages or order for a judicial sale and any process or writ directed to a sheriff for execution shall bear, on its face, the rate of interest that is payable on the judgment. The rate of interest stated in the judgment, as adjusted in subsection (3), accrues on the judgment until it is paid.

(3) The interest rate is established at the time a judgment is obtained and such interest rate shall be adjusted annually on January 1 of each year in accordance with the interest rate in effect on that date as set by the Chief Financial Officer until the judgment is paid, except for judgments entered by the clerk of the court pursuant to ss. 55.141, 61.14, 938.29, and 938.30, which shall not be adjusted annually.

(4) A sheriff shall not be required to docket and index or collect on any process, writ, judgment, or decree, described in subsection (2), and entered after the effective date of this act, unless such process, writ, judgment, or decree indicates the rate of interest. For purposes of this subsection, if the process, writ, judgment, or decree refers to the statutory rate of interest described in subsection (1), such reference shall be deemed to indicate the rate of interest.

§ 55.03, Fla. Stat. (2011). The Appellant seeks to apply this version of the statute to the post-judgment interest incurred after the statute's enactment on July 1, 2011.

## III. ANALYSIS

In order to determine what version of the statute applies, it is necessary to examine the language in the versions of the statute at issue.

Statutory interpretation is a purely legal matter and therefore subject to the de novo standard of review. Kephart v. Hadi, 932 So. 2d 1086, 1089 (Fla. 2006). When interpreting a statute, courts look first to the statute's plain meaning. See Joshua v. City of Gainesville, 768 So. 2d

6

432 (2000). If the statute's plain meaning is clear and unambiguous, courts should rely on the words used in the statute without involving rules of construction or speculating as to the legislature's intent. See Borden v. East-European Ins. Co., 921 So. 2d 587, 595 (Fla. 2006). Court should give statutory language its plain and ordinary meaning, and may not add words that were not included by the legislature. Id.; see Exposito v. State, 891 So. 2d 525 (Fla. 2004).

Germ v. St. Luke's Hosp. Ass'n, 993 So. 2d 576, 578 (Fla. 1st DCA 2008). The language at issue here is in subsection three of the 2010 version of the statute, which provides that "the interest rate established at the time a judgment is obtained shall remain the same until the judgment is paid." § 55.03(3), Fla. Stat. (2010). Townsend argues that this language provides evidence that the Legislature intended this version of the statute to apply to all interest incurred after the judgment was entered. We disagree for two reasons. First, this language does not show that the Legislature intended to abandon the common law default rule. Second, this language does not create a vested right in a specific interest rate.

**A. Default Rule**

In Florida and the majority of states, the default rule is that post-judgment interest rates change on existing judgments when the Legislature changes the rates. See Glades Cnty. v. Kurtz, 101 F.2d 759, 759-60 (5th Cir. 1939) (holding that that the amendment to the post-judgment interest rate statute applied to interest accruing after the date of the amendment on an existing judgment because the determination of the rate of interest on a judgment is subject to the Legislature's

7

discretion). However, Florida courts have held that the default rule does not apply when the Legislature specifically provides that it does not. See Applestein v. Simons, 586 So. 2d 441, 442 (Fla. 3d DCA 1981); Beverly Enters. v. Spilman, 689 So. 2d 1230, 1231 (Fla. 5th DCA 1997). In Applestein v. Simons, the Third District Court of Appeal addressed whether the 1980 and 1981 amendments to the post-judgment interest rate statute applied to a 1979 judgment. 586 So. 2d at 442. The court found that "[g]enerally the interest rate would change on an unsatisfied final judgment as the statute proscribing the rate of interest is amended, unless otherwise provided in the basic agreement upon which the final judgment was rendered." Id. (citing to Glades, 101 F.2d at 759). However, the court examined the language in the amendments at issue and found that it specifically excluded the application of the new rate to judgments enacted prior to the amendments. Applestein, 586 So. 2d at 442. This language included the following:

> Chapter 80-110, Section 2. "This act shall apply to any judgment or decree entered on or after the effective date of this act.
>
> Section 3. This act shall take effect October 1, 1980."
>
> Chapter 81-113, "(1) A judgment or decree entered on or after October 1, 1981 shall bear interest at the rate of 12 percent a year unless the judgment or decree is rendered on a written contract or obligation providing for interest at a lesser rate, in which case the judgment or decree bears interest at the rate specified in such written contract or obligation."

Id. at n.4.

Additionally, in <u>Beverly Enterprises v. Spilman</u>, the Fifth District Court of Appeal examined whether the 1994 amendment to section 55.03 applied to judgments entered before the effective date of the amendment. 689 So. 2d at 1231. The statute in effect at the time of judgment provided for an interest rate of 12 percent. <u>Id.</u> The amendment to the statute stated:

> (1) On December 1 of each year beginning December 1, 1994, the Comptroller of the State of Florida shall set the rate of interest that shall be payable on judgments or decrees for the year beginning January 1 by averaging the discount rate of the Federal Reserve Bank of New York for the preceding year, then adding 500 basis points to the averaged federal discount rate. The Comptroller shall inform the clerk of the courts and chief judge for each judicial circuit of the rate that has been established for the upcoming year. The initial interest rate established by the Comptroller shall take effect on January 1, 1995, and the interest rate established by the Comptroller in subsequent years shall take effect on January 1 of each following year. *Judgments obtained on or after January 1, 1995,* shall use the previous statutory rate for the time periods before January 1, 1995, for which interest is due and *shall apply the rate set by the Comptroller for time periods after January 1, 1995, for which interest is due.* Nothing contained herein shall affect a rate of interest established by written contract or obligation.

<u>Id.</u> (quoting § 55.03(1), Fla. Stat. (Supp. 1994) (emphasis added)).

The court found that the language in the amendment showed that the Legislature was establishing a procedure for fixing a flexible interest rate for judgments entered on or after January 1, 1995. <u>Id.</u> The court applied the reasoning in <u>Applestein</u> to find that the statutory language limited its applicability to those

judgments entered on or after its effective date. Id. Because the judgment in question was entered before that date, the court held it did not apply. Id.

Unlike the 1980, 1981, and 1994 versions of the statute, the 2011 version of section 55.03 does not specifically state that it only applied to judgments entered after its effective date. As such, we find that the 2011 amendment did not provide specific language showing the Legislature intended to abandon the common law default rule.

In addition, the default rule is in accord with the principle that one legislature cannot bind the hands of a future legislature. See Scott v. Williams, 107 So. 3d 379, 389-90 (Fla. 2013) (finding that the preservation of rights statute was not intended to bind future legislatures from prospectively altering benefits for future service performed by all members of the Florida Retirement System). If this Court construes subsection three as is argued by Townsend, the Legislature in 1998 would have bound the hands of future legislatures seeking to make changes to post-judgments interest accruing in a certain time period.

**B. Vested right**

The United States Supreme Court has examined whether post-judgment interest rates are a vested right. The court found that:

> Should the statutory damages for nonpayment of a judgment be determined by a state . . . the owner of a judgment will be entitled to receive and have a vested right in the damages which shall have accrued up to the date of the legislative change; but after that time his rights as

10

to interest as damages are, as when he first obtained his judgment, just what the legislature chooses to declare.

Morley v. Lake Shore & M. S. Ry. Co., 146 U.S. 162, 168 (1892). As such, Townsend has a vested right in the 2010 interest rate as applied to interest accrued until the 2011 amendment's effective date. However, on July 1, 2011, the 2011 amendment's effective date, the Appellant no longer had a vested right in the post-judgment interest rate that was previously in place.

Because the 2011 amendment to section 55.03 did not provide any language limiting its application to judgments entered after its effective date and because the Appellant did not have a vested right in the prior version's interest rate after the effective date of the amendment, we reverse the trial court's order below and remand with instructions for the trial court to apply the 2011 amendment's interest rate to interest accrued after July 1, 2011.

However, recognizing that this raises an issue of great public importance, we certify the following question:

> DOES THE LANGUAGE OF SECTION 55.03(3), FLORIDA
> STATUTES (1998), PROVIDE THAT THE LEGISLATURE
> INTENDED TO ABANDON THE COMMON LAW RULE THAT
> POST-JUDGMENT INTEREST RATES CHANGE ON EXISTING
> JUDGMENTS WHEN THE LEGISLATURE CHANGES THE
> RATES SUCH THAT THE 2011 AMENDMENTS TO SECTION
> 55.03, FLORIDA STATUTES DO NOT APPLY TO A JUDGMENT
> ENTERED PRIOR TO JULY 1, 2011?

REVERSED and REMANDED.

11

BILBREY, J., CONCURS; SWANSON, J., DISSENTING in part and CONCURRING in part with opinion.

SWANSON, J., dissenting in part and concurring in part.

When the trial court entered the final judgment for appellee in April 2010, the applicable statute provided that "[t]he interest rate established at the time a judgment is obtained shall remain the same until the judgment is paid." § 55.03(3), Fla. Stat. (2009). It is undisputed that the interest rate in April 2010 was six percent. Accordingly, under the plain language of the statute, appellee is entitled to post-judgment interest at the fixed rate of six percent until the final judgment is paid in full.

Effective July 1, 2011, section 55.03(3) was amended to provide that "[t]he interest rate <u>is</u> established at the time a judgment is obtained <u>and such interest rate</u> <u>shall be adjusted annually on January 1 of each year in accordance with the interest</u> <u>rate in effect on that date as set by the Chief Financial Officer</u>" until the judgment is paid. Ch. 2011-169, §§ 1, 3, at 2893-94, Laws of Fla. Absent a clear expression of legislative intent that this amendment applies to judgments obtained before July 1, 2011, the substantive change from a fixed to an adjustable rate of post-judgment interest did not apply retroactively to the final judgment in this case. <u>See</u> <u>Maronda</u> <u>Homes, Inc. of Fla. v. Lakeview Reserve Homeowners Ass'n, Inc.</u>, 127 So. 3d 1258, 1272 (Fla. 2013) ("For the retroactive application of a law to be constitutionally permissible, the Legislature must express a clear intent that the law apply retroactively, and the law must be procedural or remedial in nature.").

Where the statute at the time of the final judgment expressly provided that appellee is entitled to post-judgment interest at a fixed rate until the final judgment is paid in full, we should not rely on a common law rule to presume the Legislature intended to retroactively reduce what was a fixed rate of post-judgment interest thereby diminishing the value of this multi-million-dollar judgment. Because nothing in the language of the amendment itself supports such an intent, I respectfully dissent from the majority's conclusion that the amendment applied in this case.  However, I concur in certifying the question of great public importance to our supreme court.