In the Interest of M.C.C., A Child.

No. 2–02–366–CV.

Court of Appeals of Texas,
Fort Worth.

July 22, 2004.

---

Greg Abbott, Atty. Gen., Barry R. McBee, First Asst. Atty. Gen., Rhonda Amkraut Pressley, Chief, Appeals and Research Section and John B. Worley, Asst. Atty. Gen., Austin, for Appellant.

Stephanie A. Foster, Arlington, for Appellee.

PANEL A: CAYCE, C.J.; GARDNER and McCOY, JJ.

## OPINION

ANNE GARDNER, Justice.

Appellant, the Office of Attorney General (OAG), appeals from a judgment ordering Appellee Toby Allen Collins to pay $19,531.33 in child support arrearages, an amount which includes prejudgment interest calculated at a rate of six percent simple interest per annum. In one issue, the OAG argues that the trial court erred in its interpretation and application of section 157.265 of the Texas Family Code, as amended in 2001, which decreased the rate for the accrual of prejudgment interest on unpaid child support from twelve percent per year to six percent. *See* TEX. FAM. CODE ANN. § 157.265 (Vernon 2002). We will affirm.

### I. Background Facts and Procedural History

The facts are undisputed. Appellee and Allyn Collins were divorced in 1993. Appellee and Allyn are the parents of M.C.C., who was born on January 7, 1981. The

divorce decree ordered Appellee to pay $525 per month in child support, in $242.30 bi-weekly payments, beginning on July 30, 1993. Because Appellee had not fully paid his court-ordered child support, in December 2001, the OAG filed a motion for enforcement to confirm and reduce Appellee's unpaid child support to a cumulative money judgment. This was the first enforcement action filed in the case. The OAG alleged that, since July 30, 1993, Appellee's court-ordered child support had accrued in the amount of $47,678.18 and had accrued interest in the amount of $12,577.94. Further, the OAG alleged that Appellee had paid only $32,175.50 of the total amount, which left a total arrearage, including interest, of $28,080.62 as of November 25, 2001.

On May 31, 2002, the Title IV–D master heard the OAG's motion and, contrary to the OAG's position, signed a proposed order confirming arrearages, including interest, in the amount of $19,531.33 as of April 30, 2002. In calculating this amount, the master calculated interest on the delinquent child support at the rate of six percent per annum from the date each payment first became due. The OAG filed a notice of appeal to the district court from the master's recommendation, arguing that the Title IV–D master improperly applied the six percent interest rate.

The only issue in dispute in the appeal to the trial court was whether the interest on Appellee's unconfirmed arrearages ran at twelve percent or six percent before January 1, 2002, the date the statute reducing the interest rate from twelve percent to six percent went into effect. *See id.* § 157.265 historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 3(a), 2001 Tex. Gen. Laws 5294, 5295]. During the hearing, Appellee's attorney acknowledged that the master "took the interest that was [alleged] in the AG's pleadings and just cut it in half, reducing it from the [twelve] percent to the six percent."

On August 1, 2002, the trial court signed an order adopting the master's proposed order as the order of the court. The court also signed an order confirming and reducing Appellee's delinquent child support to a cumulative money judgment. Appellant filed a motion for new trial and requested findings of fact and conclusions of law. After a hearing, the trial court denied the motion for new trial and later filed findings of fact and conclusions of law. The trial court concluded that "the plain meaning of § 157.265 of the Texas Family Code means that any arrearages that are confirmed and reduced to a money judgment after the date of January 1, 2002, will be assessed interest at six percent (6%)." Thus, the court concluded that Appellee "is in arrears in the amount of $19,531.33 with an interest rate of 6% per annum, payable in the amount of $525.00 each month beginning on the 1st day of June, 2002, payable on or before that date and on or before the same day each month thereafter until the arrearage is paid in full."

## II. Sole Issue: Construction of Section 157.265

In this appeal, the OAG complains that the amendment to family code section 157.265, which lowered the interest rate on delinquent child support from twelve to six percent, applies only to interest accruing *after* the Act's effective date of January 1, 2002 and that interest on unconfirmed delinquent arrearages existing before January 1, 2002 accrued at the previous twelve percent rate up until that date. The OAG urges us to reverse the judgment and remand the case for a recalculation of arrearages because the trial court improperly reduced by half the unconfirmed interest that had accrued before January 1, 2002.

Specifically, the OAG argues that we should apply the twelve percent rate to Appellee's child support arrearages before January 1, 2002 and the six percent rate to those arrearages after January 1, 2002 because the legislature intended the 2001 amendment to be applied prospectively only and because the Code Construction Act prescribes that it be so construed. Alternatively, the OAG asserts that, even if we were to determine that section 157.265 presents a clear textual indication of retroactive applicability, we cannot so construe the statute without violating family code section 157.262(a)'s prohibition of a trial court's retroactive modification of the amount of child support arrearages and the Texas Constitution's general prohibition against retroactive laws. For the following reasons, we reject the OAG's construction of family code section 157.265.

## III. Applicable Portions of Family Code Section 157

Before addressing the interpretation of section 157.265, we think it is helpful to place that section in context with other pertinent provisions of the family code. Chapter 157 is titled "Enforcement," and sections 157.261–157.269 comprise the portion of chapter 157 concerning "Judgment[s] and Interest." TEX. FAM.CODE ANN. §§ 157.261–157.269 (Vernon 2002). With respect to interest, section 157.267 states that "[a]ccrued interest is part of the child support obligation and may be enforced by any means provided for the collection of child support." *Id.* § 157.267. At present, interest on child support accrues in the following manner:

(a) Interest accrues on the portion of delinquent child support that is greater than the amount of the monthly periodic support obligation at the rate of six percent simple interest per year from the date the support is delinquent until the date the support is paid or the arrearag-

es are confirmed and reduced to money judgment.

(b) Interest accrues on child support arrearages that have been confirmed and reduced to money judgment as provided in this subchapter at the rate of six percent simple interest per year from the date the order is rendered until the date the judgment is paid.

(c) Interest accrues on a money judgment for retroactive or lump-sum child support at the annual rate of six percent simple interest from the date the order is rendered until the judgment is paid.

*Id.* § 157.265.

Section 157.263 authorizes an enforcement action to reduce unpaid child support to judgment and states in pertinent part:

(a) If a motion for enforcement of child support requests a money judgment for arrearages, the court shall confirm the amount of arrearages and render one cumulative money judgment.

(b) A cumulative money judgment includes:

(1) unpaid child support not previously confirmed;

(2) the balance owed on previously confirmed arrearages or lump sum or retroactive support judgments;

(3) interest on the arrearages; and

(4) a statement that it is a cumulative judgment.

*Id.* § 157.263. In rendering a money judgment, a trial court "may not reduce or modify the amount of child support arrearages." *Id.* § 157.262(a). "A money judgment rendered as provided in this subchapter may be enforced by any means available for the enforcement of a judgment for debts." *Id.* § 157.264(a). Thus, the trial court may render an order requiring that a child support obligor's income be withheld or that he or she make periodic

payments to the parent owed back child support. *Id.* § 157.262(b).

## IV. History of Section 157.265

As the Supreme Court of Texas stated in *In re A.D.,* "Since 1974 the Legislature has amended the Family Code many times, adding and enhancing the methods courts may use to enforce their child-support orders. These new and improved enforcement mechanisms provide remedies for continuing violations of established duties." 73 S.W.3d 244, 248 (Tex.2002). This observation certainly holds true for family code section 157.265, which has been amended four times since it was enacted in 1991. *See* TEX. FAM.CODE ANN. § 157.265.

In 1991, the Texas Legislature enacted former family code section 14.34 to govern the accrual of prejudgment interest on unpaid child support payments, providing that prejudgment interest accrued on unpaid child support obligations "at the rate of ten percent a year computed monthly." Act of June 16, 1991, 72d Leg., R.S., ch. 467, 1991 Tex. Gen. Laws 1693, 1693 (amended 1993, 1995, 1999, & 2001) (current version at TEX. FAM.CODE ANN. § 157.265). This enactment codified Texas common law, which had "favored the award of prejudgment interest on awards for delinquent child support." *Castle v. Harris,* 960 S.W.2d 140, 143 (Tex.App.-Corpus Christi 1997, no pet.); *see, e.g., Medrano v. Medrano,* 810 S.W.2d 426, 428 (Tex.App.-San Antonio 1991, no writ) (holding that appellant was entitled to prejudgment interest on unpaid child support arrearages "as a matter of right" because such payments constituted "an ascertainable sum of money[,] ... determined to have been due and payable at a date certain prior to judgment") (citing *Howze v. Surety Corp. of Am.,* 584 S.W.2d 263, 268

(Tex.1979)). One commentator noted that, in enacting a rate of ten percent per year computed monthly, "[t]he legislature has added another tool to the child caretakers in their plight to collect overdue support, but it has also added a computation problem which most family practitioners are not equipped to solve." James E. Fordham, Jr. & Thomas H. Shelby, III, *A Matter of Interest: Adding Interest to Child Support Arrears,* 56 TEX. B.J. 664, 666 (1993).

Consequently, the legislature amended section 14.34, effective September 1, 1993, to allow prejudgment interest to accrue "at the rate of 12 percent simple interest per year from the date the support is delinquent until the date the support is paid, regardless of whether the amount ... had been reduced to judgment." Act of May 15, 1993, 73d Leg., R.S., ch. 150 §§ 1, 3, 1993 Tex. Gen. Laws 302, 302 (amended 1995, 1999, & 2001) (current version at TEX. FAM.CODE ANN. § 157.265). In place of former section 14.34, the legislature enacted section 157.265(a), which continued the prejudgment interest rate of twelve percent per year simple interest.[1] Act of April 20, 1995, 74th Leg., R.S., ch. 20, §§ 1, 4, 1995 Tex. Gen. Laws 113, 184, 282 (amended 1999 & 2001) (current version at TEX. FAM.CODE ANN. § 157.265(a)). In 1999, the legislature amended section 157.265(a) to clarify that "[i]nterest accrues on *the portion of* delinquent child support *that is greater than the amount of the monthly periodic child support obligation* at the rate of 12 percent simple interest per year...." Act of June 18, 1999, 76th Leg., R.S., ch. 943, § 1, 1999 Tex. Gen. Laws 3679, 3679 (amended 2001) (current version at TEX. FAM.CODE ANN. § 157.265(a)).

---

1. In the 1995 regular session, the legislature repealed section 14.34. Act of April 20, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282.

As one commentary notes, the twelve percent rate was apparently reasonable at the time it was enacted, but with time, the legislature determined that "imposing an interest rate on unpaid child support arrears far beyond market rate is counterproductive," resulting only in "a greater level of noncompliance." JOHN J. SAMPSON ET AL., TEXAS FAMILY CODE ANNOTATED § 157, Introductory Cmt., 677 (13th ed.2003). In other words, because the high interest rate was discouraging, rather than promoting, compliance with child support orders, the legislature again amended section 157.265 in the 2001 regular session, decreasing the rate of interest accruing on child support payments from twelve percent to six percent simple interest per year. TEX. FAM.CODE ANN. § 157.265(a).[2] Section 3 of the 2001 enabling legislation concerns the effective date of the statute and provides for the determination of the applicable rate as follows:

(a) This Act takes effect January 1, 2002.

(b) The change in law made by this Act applies only to:

(1) a child support payment that becomes due on or after the effective date of this Act; and

(2) unpaid child support that became due before the effective date of this Act and for which a court has not confirmed the amount or arrearages and rendered a money judgment.

(c) A money judgment for child support rendered before the effective date of this Act is governed by the law in effect on the date the judgment was rendered, and the former law is continued in effect for that purpose.

*Id.* § 157.265 historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 3, 2001 Tex. Gen. Laws 5294, 5295]. This appeal concerns the construction of subsections 3(a) and (3)(b)(2). *See id.*

## V. Interpreting Section 157.265

■■■■ Because construction of section 157.265 presents a question of law, we review this issue under a de novo standard. *See Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989) (holding statutory construction is a question of law); *Rogers v. City of Fort Worth,* 89 S.W.3d 265, 274 (Tex.App.-Fort Worth 2002, no pet.). We are "not to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results; rather, our task is to interpret those statutes in a manner that effectuates the Legislature's intent." *McIntyre v. Ramirez,* 109 S.W.3d 741, 748 (Tex.2003); *see Phillips v. Beaber,* 995 S.W.2d 655, 658 (Tex. 1999); *In re E.D.L.,* 105 S.W.3d 679, 685 (Tex.App.-Fort Worth 2003, pet. denied).

### A. Did the Legislature Expressly Make Section 157.265 Retrospective?

In determining the legislature's intent, we first look to the statute's plain and common meaning and presume that the legislature intended the plain meaning of its words. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *Fleming Foods v. Rylander,* 6 S.W.3d 278, 282 (Tex.1999). Further, in construing a statute, regardless of whether the statute is ambiguous,

---

**2.** We also note that three bills to amend section 157.265 were introduced during the 2003 Regular Session, but none were enacted. *See* Tex. S.B. 1294, 78th Leg., R.S. (2003) (seeking to raise interest rate from six to nine percent); Tex. H.B. 312, 78th Leg., R.S. (2003) (same); Tex. H.B. 1067, 78th Leg., R.S. (2003) (seeking to clarify effective date of 2001 amendments).

we may consider among other matters the: (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular construction; (6) administrative construction of the statute; and (7) title (caption), preamble, and emergency provision. TEX. GOV'T CODE ANN. § 311.023; *see also Brown v. Owens,* 674 S.W.2d 748, 750 (Tex.1984) (In determining the legislature's intent, "we must consider the entire Act, its nature and object, and the consequences which follow from each construction.").

■ "A statute is presumed to be prospective in its operation unless expressly made retrospective." TEX. GOV'T CODE ANN. § 311.022; *see also* TEX. CONST. art. I, § 16 ("No ... retroactive law ... shall be made."). Similarly, the Supreme Court of Texas states the rule regarding retrospective application of statutory provisions as follows: "[S]tatutes [will not be applied] retrospectively [unless] it appears by fair implication from the language used that it was the intention of the Legislature to make it applicable to both past and future transactions." *State v. Humble Oil & Refining Co.,* 141 Tex. 40, 169 S.W.2d 707, 708–09 (1943); *see Rice v. Louis A. Williams & Assoc., Inc.,* 86 S.W.3d 329, 335 (Tex.App.-Texarkana 2002, pet. denied).

■ According to section 3(a) of the historical and statutory notes, the effective date of the 2001 amendment to section 157.265 is January 1, 2002. *See* TEX. FAM. CODE ANN. § 157.265 historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 3(a), 2001 Tex. Gen. Laws 5294, 5295]. Section 3(b) identifies the two categories of child support payments to which the new six percent simple interest rate applies: (1) "child support that *becomes due on or*

*after* [January 1, 2002]" and (2) "unpaid child support that *became due before* [January 1, 2002] *and for which a court has not confirmed the amount of arrearages and rendered a money judgment." See* TEX. FAM.CODE ANN. § 157.265 historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 3(b), 2001 Tex. Gen. Laws 5294, 5295] (emphasis added). By stating that "[t]he change in law made by this Act applies *only* to" these two categories of child support payments, the legislature indicated its intent to limit the applicability of the new six percent rate to these two classes of child support payments. *See id.* (emphasis added).

The OAG contends that the six percent interest rate on delinquent child support applies only to interest accruing after the Act's effective date of January 1, 2002. In support of this position, the OAG cites the Code Construction Act's presumption against a statute's retroactive application and argues that section 157.265 does not expressly state that it retroactively changes the rate on all unconfirmed arrearages owed prior to January 1, 2002. *See* TEX. GOV'T CODE ANN. § 311.022.

To further its argument, the OAG cites *Coastal Industrial Water Authority v. Trinity Portland Cement Division, General Portland Cement Co.* for the proposition that an act changing a statutory interest rate is presumed to be prospective, absent a clear textual indication of retroactivity. 563 S.W.2d 916, 918–19 (Tex.1978) (construing 1975 version of post-judgment interest statute). We do not find the OAG's reliance on *Coastal* to be persuasive. *Coastal* states, "[T]he provision in the amended statute that judgments shall bear interest at the rate of nine percent *'from and after the date of such judgment'* plainly suggests that the rate shall be applied prospectively only." 563 S.W.2d at 918 (emphasis added). While *Coastal* con-

cerned the 1975 amendment to the general post-judgment interest statute increasing the interest rate from six percent to nine percent, the language of the 1975 statute at issue in *Coastal* differs significantly from the language at issue in this appeal. *Id.* at 916–17; *see also* TEX. FIN.CODE ANN. § 304.302 (Vernon Supp.2004) (stating judgment interest chapter in the finance code is inapplicable to interest accruing under family code section 157.265). Thus, *Coastal* does not aid us in our interpretation of the language found in section 3(b)(2) of section 157.265's historical and statutory notes. *See* TEX. FAM.CODE ANN. § 157.265 historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 3(b)(2), 2001 Tex. Gen. Laws 5294, 5295].

The OAG also refers us to *In re A.R.J.*, in which the Dallas Court of Appeals addressed the exact issue presenting itself in the case in hand. 97 S.W.3d 833, 834 (Tex.App.-Dallas 2003, no pet.). The court in *A.R.J.* stated, "Clearly, under a plain reading of section 3(b)(2), the six percent interest rate applies to unconfirmed arrears prior to January 1, 2002." *Id.* Despite this statement, the court concluded that nothing in section 3 of the historical and statutory notes "suggest[s] that the legislature intended the changed rate to apply retroactively." *Id.* at 835. Consequently, the court held that "unpaid child support obligations that have not been confirmed and reduced to judgment as of January 1, 2002 are subject to the twelve percent interest rate until January 1, 2002," at which time "interest begins accruing on those unpaid child support obligations at the new six percent rate." *Id.*

As Appellee points out in his brief, the courts of appeals in Waco and Amarillo—the only other courts to address the precise issue presented in this case—have both rejected *A.R.J.'s* reasoning. *See In re A.B.L.*, No. 10–02–267–CV, 2003 WL 21470071, at *1 (Tex.App–Waco June 25, 2003, no pet.) (mem.op.); *In re Hurd*, No. 07–02–0334–CV, 2003 WL 1961142, at *2 & n. 1 (Tex.App.-Amarillo Apr.28, 2003, no pet.). In *Hurd*, the Amarillo court, in concluding the legislature did not intend a retroactive application of section 157.265, observed that *A.R.J.* failed to "mention the passage in the enabling legislation stating that the change 'applies to … unpaid child support that became due before [January 1, 2002] and for which a court has not confirmed the amount of arrearages and rendered a money judgment.'" 2003 WL 1961142, at *2 n. 1; *see* TEX. FAM.CODE ANN. § 157.265 historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 3(b)(2), 2001 Tex. Gen. Laws 5294, 5295].

Further, *Hurd* criticizes *A.R.J.* for "read[ing] into the enabling legislation wording that divided unpaid child support into different categories, those categories being unpaid support that accrued before January 1, 2002, and unpaid support that accrued after January 1st," with the former accruing interest at twelve percent and the latter at six percent, which is the same interpretation by the OAG in this case. 2003 WL 1961142, at *2. Instead, both *A.B.L.* and *Hurd* conclude that section 157.265 as written applies retrospectively. *A.B.L.*, 2003 WL 21470071, at *1; *Hurd*, 2003 WL 1961142, at *2. We agree that *A.R.J.* ignored the plain, express language of section 3(b)(2), which demonstrates the legislature's intent to have retrospective application of section 157.265.

Neither *A.B.L.* nor *Hurd* delve into the legislative history behind the 2001 amendment to section 157.265, but the OAG argues that legislative history supports the view that section 157.265 is "purely prospective." We disagree. Senate Bill 776 was introduced as an Act "relating to the

collection of accrued interest on child support payments." Tex. S.B. 776, 77th Leg., R.S. (2001). After the bill moved from the Senate to the House, it emerged from the House Juvenile Justice and Family Issues Committee revamped as an Act "relating to the accrual of interest on child support." Tex. Comm. Substitute S.B. 776, 77th Leg., R.S. (2001). The text of Committee Substitute S.B. 776 provided that

> [t]he change in law made by Section 157.265, Family Code, as amended by this Act, applies only to a child support payment that becomes due on or after the effective date of this Act. A child support payment that became due before the effective date of this Act is governed by the law in effect on the date the child support payment became due, and the former law is continued in effect for that purpose.

*Id.* Committee Substitute S.B. 776 stated, "This Act takes effect January 1, 2002. *Id.*

Representative Toby Goodman, who sponsored Committee Substitute S.B. 776 offered amending language to the bill on May 17, 2001:

> The change in law made by Section 157.265, Family Code, as amended by this Act, applies only to a child support payment that becomes due or money judgment for child support that is rendered on or after the effective date of this Act. A child support payment that became due or a money judgment for child support that was rendered before the effective date of this Act is governed by the law in effect on the date the child support payment became due or the money judgment was rendered, and the former law is continued in effect for that purpose.

Tex. Comm. Substitute S.B. 776, 77th Leg., R.S. (2001) (May 17, 2001 amendment by Goodman) (available at http://www.capi-

tol.state.tx.us). At the time Representative Goodman offered the amendment, he stated that it "clears up some language in the effective date." House Debate on S.B. 776, 77th Leg., R.S. (available at http://www.house.state.tx.us/media/chamber/77.htm, House Archived Chamber Broadcasts Part 4, at 13:18–14:08, May 17, 2001). The amendment was adopted without further comment or objection. *Id.*

On May 18, 2001, Representative Goodman offered another amendment to Committee Substitute S.B. 776, which contains the language enacted in section 157.265's historical and statutory notes. Tex. Comm. Substitute S.B. 776, 77th Leg., R.S. (2001) (May 18, 2001 amendment by Goodman) (available at http://www.capitol.state.tx.us); *see* Tex. Fam.Code Ann. § 157.265 historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 3, 2001 Tex. Gen. Laws 5294, 5295]. Representative Goodman stated at the time he offered the second amendment on the House floor that "this clears up the effective date that was changed yesterday and was changed before, so the Attorney General's office can calculate interest." House Debate on S.B. 776, 77th Leg., R.S., (available at http://www.house.state.tx.us/media/chamber/77.htm, House Archived Chamber Broadcasts Part 2, at 1:52:31–1:53:22, May 18, 2001). This amendment likewise was adopted without further comment or objection. *Id.*

■ The enacted version of S.B. 776 expressly states that the new six percent interest rate applies to "unpaid child support that *became due before* [January 1, 2002] and *for which a court has not confirmed the amount of arrearages and rendered a money judgment*"; whereas, the express language in both the original version of Committee Substitute S.B. 776 and the version adopting Representative Goodman's first amendment would not have

subjected this category of child support to the new six percent rate. TEX. FAM.CODE ANN. § 157.265 historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 3(b)(2), 2001 Tex. Gen. Laws 5294, 5295] (emphasis added). We must presume that the legislature chose its words carefully, recognizing that every word in a statute was included for some purpose and that every word excluded was omitted for a purpose. *In re M.J.M.L.*, 31 S.W.3d 347, 354 (Tex.App.-San Antonio 2000, pet. denied); *Renaissance Park v. Davila*, 27 S.W.3d 252, 256 (Tex.App.-Austin 2000, no pet.). Thus, upon a close examination of the evolution of the Act's language, we think section 157.265, as enacted, expresses the legislature's intent to subject child support arrearages existing before January 1, 2002 that are not confirmed and reduced to a money judgment until on or after that date to the six percent interest rate.

The OAG directs us to other legislative history, namely the bill analysis of section 157.265, as enacted, which reads in relevant part as follows:

SECTION 1. Amends Section 157.265, Family Code, to reduce the rate of accrual of interest on child support arrearage from 12 to six percent simple interest per year.

. . . .

SECTION 3. Effective date: January 1, 3003.[sic]

Makes Application of this Act prospective.

SENATE RESEARCH CENTER, BILL ANALYSIS, Tex. S.B. 776, 77th Leg., R.S. (2001). The bill analysis, however, does not analyze section 3(b)(2)'s clear and express statement that the six percent rate applies to "unpaid child support that *became due before* [January 1, 2002] and for which a court has not confirmed the amount of arrearages and rendered a money judg-

ment." *Id.*; TEX. FAM.CODE ANN. § 157.265 historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 3(b)(2), 2001 Tex. Gen. Laws 5294, 5295] (emphasis added).

In short, we are not persuaded that this terse and largely unexplained shard of legislative history clarifies or better expresses the legislature's intent than the express language of section 157.265 and its historical and statutory notes, as enacted by the 77th Legislature. To the extent the Senate Research Center Bill Analysis seemingly conflicts with the express language of the statute, the enacted language controls. *See, e.g., Robinson v. Budget Rent–A–Car Sys., Inc.*, 51 S.W.3d 425, 434 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (stating that it is inappropriate to use legislative history in determining legislative intent when such legislative history "would alter and disregard the express terms of a clear and unambiguous code provision").

From the plain language of section 3(b)(2), we conclude that the legislature clearly stated its intent to apply the reduced six percent prejudgment interest rate to arrearages existing before January 1, 2002 that had not been confirmed and reduced to a money judgment as of that date. We agree with *Hurd* that, in reading section 3's language in context, giving effect to its plain meaning, "one cannot but read it as fairly implying that the reduction was to apply to both past and future arrearages as long as they had yet to be confirmed and reduced to an actual money judgment." 2003 WL 1961142, at *2; *see Humble Oil & Refining Co.*, 141 Tex. 40, 169 S.W.2d at 708–09; *Rice*, 86 S.W.3d at 335; *see also A.B.L.*, 2003 WL 21470071, at *1. We hold that, as written, section 157.265 expresses the legislature's intent that it be applied retrospectively. *See A.B.L.*, 2003 WL 21470071, at *1; *Hurd*, 2003 WL 1961142, at *2.

**B. Can Section 157.265 Be Construed to Apply Retrospectively Without Violating Other Provisions in the Family Code or Article I, Section 16 of the Texas Constitution?**

Having determined that section 157.265 expresses legislative intent of retrospective applicability, we must determine whether such a construction can be given to section 157.265, in light of statutory and constitutional provisions. "In enacting a statute, it is presumed that: (1) compliance with the constitutions of this state and the United States is intended; (2) the entire statute is intended to be effective; (3) a just and reasonable result is intended; (4) a result feasible of execution is intended; and (5) public interest is favored over any private interest." TEX. GOV'T CODE ANN. § 311.021. The OAG argues that retrospective application of section 157.265 conflicts with the Texas Family Code, violates article I, section 16 of the Texas Constitution, and leads to foolish or absurd results. *See id.* § 311.021(1)-(3). We will address each of these arguments in turn.

**1. Conflicts with the Family Code?**

Because we determine legislative intent concerning money judgments and interest from the entire Act, and not just from isolated portions of the Act, we must examine other pertinent sections of the family code. *See* TEX. FAM.CODE ANN. §§ 157.261–157.269; *State ex rel. Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002). Family Code section 157.261(a) states, "A child support payment not timely made constitutes a final judgment for the amount due and owing, including interest as provided in this chapter." TEX. FAM.CODE ANN. § 157.261(a). Section 157.267 provides, "Accrued interest is part of the child support obligation and may be enforced by any means provided for the collection of child support," while section 157.265 estab-

lishes the applicable interest rates to delinquent child support. *Id.* §§ 157.265, 157.267.

The OAG first argues that we should not interpret section 157.265 to apply retroactively because such a construction would conflict with sections 157.262(a) and 156.401(b) of the family code. *See* TEX. GOV'T CODE ANN. § 311.021(2); *In re Azle Manor, Inc.,* 83 S.W.3d 410, 414 (Tex.App.-Fort Worth 2002, orig. proceeding [mand. denied]) (stating that statutes appearing to be in conflict should be read to "give effect to both by assigning each a meaning that will permit each to stand"). Section 157.262(a) states that "[e]xcept as provided by this section, ... in rendering a money judgment, the court may not reduce or modify the amount of child support arrearages." TEX. FAM.CODE ANN. § 157.262(a). Section 156.401(b) provides that a "support order may be modified only as to obligations accruing after the earlier of: (1) the date of the service of citation; or (2) an appearance in the suit to modify." *Id.* § 156.401(b).

Specifically, the OAG asserts that a retroactive application of section 157.265 conflicts with section 157.262(a) by requiring courts to reduce interest that has previously accrued on child support arrearages that became due before the effective date of the statute. The OAG also contends that such a construction conflicts with section 156.401(b) by thus requiring a trial court to "modify" the interest portion of a delinquent child support obligation that had accrued before the date of service or an appearance in a modification suit.

■ We are not persuaded by the OAG's argument that a retroactive construction of section 157.265 conflicts with either section 157.262(a) or section 156.401(b). TEX. FAM.CODE ANN. §§ 156.401(b), 157.262(a), 157.265. The is-

sue before us is not whether the *trial court* impermissibly violated section 157.262(a) by calculating interest based on the reduced interest rate. *Id.* § 157.262(a). Instead, we must determine whether the *legislature,* as it did in 2001, can reduce or otherwise modify the interest rate that trial courts are bound to follow in computing interest on child support arrearages.

With respect to calculating and rendering a cumulative judgment, "the trial court acts as 'a mere scrivener' who mechanically tallies the amount of arrearages." *In re M.C.R.,* 55 S.W.3d 104, 109 (Tex.App.-San Antonio 2001, no pet.) (citing *Williams v. Patton,* 821 S.W.2d 141, 153 (Tex.1991) (Phillips, C.J., dissenting)). The trial court has a ministerial duty to confirm the amount of the arrearages plus accrued interest under the applicable statutorily-provided interest rate and render a cumulative money judgment in the total amount due and owing to the obligee. *Id.* at 110. In rendering a money judgment, a court does not have discretion to increase or reduce the arrearages or the interest. TEX. FAM.CODE ANN. § 157.262(a); *see also M.C.R.,* 55 S.W.3d at 109–110 (holding trial court abused its discretion by only awarding half of the amount of accrued interest owed by the obligor). In this case, the *trial court* did not reduce or modify the amount of interest that had accrued on Appellee's delinquent child support; rather, in confirming the amount of the arrearage plus the accrued interest, it applied the *legislatively*-decreased six percent interest rate to the amount of the arrearages.

Likewise, a retroactive construction of section 157.265 does not conflict with section 156.401(b). Section 156.401(b) governs the modification of a trial court's order(s) concerning, among other things, child support. *See* TEX. FAM.CODE ANN. § 156.401(b). Section 157.263 permits a trial court to enforce a child support order by

confirming the amount of child support arrearages, including interest, and rendering a cumulative money judgment. *Id.* § 157.263. Thus, a trial court does not modify a previous SAPCR order under section 156.401(b) when it renders a money judgment under section 157.263. *Id.* §§ 156.401(b), 157.263, 157.265.

In this case, the trial court did not modify its 1993 SAPCR order concerning Appellee's child support obligation when it reduced Appellee's unpaid child support payments, including interest, to a money judgment. Rather, the trial court applied the reduced six percent interest rate that the 2001 Legislature made applicable to "unpaid child support that *became due before* [January 1, 2002] *and for which a court has not confirmed the amount of arrearages and rendered a money judgment.*" *See* TEX. FAM.CODE ANN. § 157.265 historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 3(b), 2001 Tex. Gen. Laws 5294, 5295] (emphasis added).

**2. Conflict with the Texas Constitution?**

On the issue of whether the legislature can modify the rate of interest applicable to pre-existing child support arrearages— which the 2001 Legislature did by lowering the twelve percent rate to six percent—the OAG asks us to examine section 157.265 in light of article I, section 16 of the Texas Constitution. *See* TEX. CONST. art. I, § 16; TEX. FAM.CODE ANN. § 157.265. In *Ex parte Abell,* the Supreme Court of Texas wrote,

It is well settled in this state that laws may not operate retroactively to deprive or impair vested substantive rights acquired under existing laws, or create new obligations, impose new duties, or adopt new disabilities in respect to transactions or considerations past. On the other hand, no litigant has a vested right in a statute or rule which affects remedy or is procedural in nature and

which affects no vested substantive right. Changes in such statutes or rules are considered remedial in nature and have been held not to violate the provisions of Article 1, sec. 16 of the Constitution.

613 S.W.2d 255, 260 (Tex.1981) (citations omitted); *see* Tex. Const. art. I, § 16; *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219–20 (Tex. 2002); *see also In re Tex. Dep't of Protective & Regulatory Servs.*, 71 S.W.3d 446, 450 (Tex.App.-Fort Worth 2002, orig. proceeding).

Section 157.261 permits a child support obligee to seek a money judgment for unpaid child support:

(a) A child support payment not timely made constitutes a final judgment for the amount due and owing, including interest as provided in this chapter.

(b) For the purposes of this subchapter, interest begins to accrue on the date the judge signs the order for the judgment unless the order contains a statement that the order is rendered on another specific date.

Tex. Fam.Code Ann. § 157.261. The OAG argues that because accrued interest is part of the child support obligation and because a child support payment not timely made is deemed to be a "final judgment" under section 157.261(a) for the amount due and owing, including interest, the right to accrued interest on unpaid child support is a statutorily vested right. *See id.* §§ 157.261(a), 157.265, 157.267. Accordingly, the OAG argues that a retroactive construction of section 157.265 would run afoul of article I, section 16 by depriving a child support obligee of a vested right to the interest that had accumulated at the former twelve percent interest rate.

Despite section 157.261(a), the OAG concedes that a delinquent child support obligation is not a "court's final judgment" because, otherwise, there would be no reason for family code section 157.263, which provides for confirming arrearages and reducing them to a cumulative money judgment by a court. *See id.* §§ 157.261(a), 157.263. However, the OAG directs us to *Gard v. Gard*, in which the Supreme Court of Texas stated,

[G]enerally speaking, where a decree is rendered for alimony and is made payable in future instalments, the right to such instalments becomes absolute and vested upon becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the instalments.

150 Tex. 347, 241 S.W.2d 618, 619 (1951) (citing *Sistare v. Sistare*, 218 U.S. 1, 16–17, 30 S.Ct. 682, 686, 54 L.Ed. 905 (1910)). Applying *Sistare* in the context of child support, *Gard* held that, under Idaho law, once the father allowed his child support payments to become delinquent, "[t]hey became the property of the [mother]." *Id.* at 620. *Gard* stated, "When the installments matured, her right thereto became 'absolute, vested, and protected by the full faith and credit clause of the federal constitution.'" *Id.* at 620. *Gard*, however, addresses only delinquent child support obligations and does not speak to the issue of statutorily-imposed prejudgment interest accruing on the delinquent child support obligations or whether, even though the obligations themselves become vested rights, prejudgment interest accruing at a particular rate on the amount due also becomes a vested right of the child support obligee.

Two cases the OAG cites that concern interest accruing on child support arrearages as a vested right are *A.B.L.* and *Hurd*. While *A.B.L.* and *Hurd* concluded that section 157.265 is retrospective as

written, both declined to so construe that section, holding that such a construction would violate article I, section 16 of the Texas Constitution.[3] *A.B.L.*, 2003 WL 21470071, at *1–2; *Hurd*, 2003 WL 1961142, at *2–3. *Hurd* examined family code sections 157.261(a) and 157.265 and observed that "the legislature has categorized the status of the delinquent payment as delinquent and due at the instant it becomes unpaid and memorialized the liability, including interest thereon, in a final judgment." 2003 WL 1961142, at *2–3. Thus, *Hurd* concluded that the legislature "effectively vested the beneficiary of the support payment with the right to receive the amount due, including interest, at the instant it went unpaid. *Id.* at *3.

While *Hurd* declined to address "whether in using the term 'final judgment' [in section 157.261(a) ] the legislature sought to perform the inherently judicial function of adjudicating a dispute," the court reasoned that "because the right to delinquent child support payments, including interest thereon, is incorporated into a final judgment through legislative fiat, then, logically, the right to the payment and interest thereon vests at the instant the delinquency arises." *Id.* at *2–3 & n. 2. *Hurd* therefore declined to construe section 157.265 retroactively so as to avoid a construction of the statute that the court reasoned would deprive beneficiaries of their vested rights. *Id.* at *3; *see also* *A.B.L.*, 2003 WL 21470071, at *1–2 (following *Hurd's* conclusion that "interest accruing on child support payments constitutes a vested right"). Consequently, both *A.B.L.* and *Hurd* held that trial courts are obligated to use the former twelve percent rate when calculating the interest accruing upon pre–January 1, 2002 delinquencies

and the six percent rate to delinquencies accruing thereafter. 2003 WL 21470071, at *2, 2003 WL 1961142, at *3.

Appellee counters these responses, arguing that section 157.265 does not involve a vested right for the child support obligee but, as described by the Corpus Christi Court of Appeals, "sets up procedural guidelines that dictate the rate and manner in which interest applies to child support arrearages." *In re W.G.S.*, 107 S.W.3d 624, 630 (Tex.App.-Corpus Christi 2002, no pet.). Further, Appellee argues that the interest provision found in chapter 157 is but one of the enforcement tools to be utilized in the enforcement of child support orders. Thus, Appellee argues that, contrary to the holdings in *A.B.L.* and *Hurd*, a retroactive construction of section 157.265 does not violate the Texas Constitution. *See A.D.*, 73 S.W.3d at 248 ("[T]he courts of appeals have consistently held that the constitutional ban on retroactive laws does not preclude applying new enforcement tools to old support orders.") (citing *Harrison v. Cox*, 524 S.W.2d 387, 391–92 (Tex.Civ.App.-Fort Worth 1975, writ ref'd n.r.e.) (affirming arrearage judgment including payments due before effective date of statute authorizing cumulative judgments)). Appellee maintains that, because section 157.265 is a remedial and corrective law, we should give meaning to the plain, express language in section 3(b)(2) as ascribed by the legislature and affirm the trial court's application of the six percent rate to all of Appellee's unconfirmed arrearages, even payments that had become delinquent before January 1, 2002.

In its reply brief, the OAG cites *Votzmeyer v. Votzmeyer*, in which the Corpus Christi Court of Appeals stated that "judg-

---

**3.** *A.B.L.* and *Hurd* both disagreed with *A.R.J.'s* interpretation of section 157.265, but all three courts reached the same result.

ment interest rates are a matter of substantive law." 964 S.W.2d 315, 321 (Tex. App.-Corpus Christi 1998, no pet.); *see also Bott v. Am. Hydrocarbon Corp.*, 458 F.2d 229, 231 (5th Cir.1972) (stating that, under Texas choice of law rules, "Texas considers interest damages a substantive matter controlled by the law of the state where the cause of action arose"); *Corrosion Rectifying Co. v. Freeport Sulphur Co.*, 197 F.Supp. 291, 293 (S.D.Tex.1961) (same). The OAG also directs us to a portion of the United State's Supreme Court decision in *Morley v. Lake Shore and Michigan Southern Railway Co.*, 146 U.S. 162, 168–69, 13 S.Ct. 54, 56–57, 36 L.Ed. 925 (1892). In *Morley*, the Supreme Court applied New York law and held that post-judgment interest was statutory and therefore subject to prospective changes in rates by the state legislature:

> After the cause of action, whether a tort or a broken contract, not itself prescribing interest till payment, shall have been merged into a judgment, whether interest shall accrue upon the judgment is a matter not of contract between the parties, but of legislative discretion, which is free, so far as the Constitution of the United States is concerned, to provide for interest as a penalty or liquidated damages for the non-payment of the judgment, or not to do so. When such provision is made by statute, the owner of the judgment is of course entitled to the interest so prescribed until payment is received, or until the State shall, in the exercise of its discretion, declare that such interest shall be changed or cease to accrue. Should the statutory damages for non-payment of a judgment be determined by a State, either in whole or in part, the owner of a judgment will be entitled to receive and have a *vested right* in the damages which shall have accrued up to the date of the legislative change; but after that

time his rights as to interest as damages are, as when he first obtained his judgment, just what the Legislature chooses to declare. He has no contract whatever on the subject with the defendant in the judgment, and his right is to receive and the defendant's obligation is to pay, as damages, just what the State chooses to prescribe.

*Id.* (emphasis added).

In examining each side's arguments regarding whether section 157.265 involves a vested right, we return to *Abell's* discussion of such rights:

> [A] right, in a legal sense, exists, when, in consequence of the existence of given facts, the law declares that one person is entitled to enforce against another a given claim, or to resist the enforcement of a claim urged by another. Facts may exist out of which, in the course of time or under given circumstances, a right would become fixed or vested by operation of existing law, but until the state of facts which the law declares shall give a right comes into existence there cannot be in law a right; and for this reason it has been constantly held that, until the right becomes fixed or vested, it is lawful for the lawmaking power to declare that the given state of facts shall not fix it, and such laws have been constantly held not to be retroactive in the sense in which that term is used.

613 S.W.2d at 261 (quoting *Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249, 253 (1887)). Further,

> A right cannot be considered a vested right, unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable, to the present or future enjoyment of a

demand or legal exemption from the demand made by another.

*Id. Abell,* 613 S.W.2d at 261, also relied on *City of Dallas v. Trammell,* which held that, for a right to be constitutionally protected, "[i]t must be something more than a mere expectancy based upon an anticipated continuance of an existing law." 129 Tex. 150, 101 S.W.2d 1009, 1014 (1937).

■ Applying *Abell* to the issue at hand, we initially observe that the supreme court has recognized two legal sources for an award of prejudgment interest: (1) general principles of equity and (2) an enabling statute. *Johnson & Higgins, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 530 (Tex.1998). Section 157.265 is the enabling statute for prejudgment interest accruing on delinquent child support and is included in a chapter of the family code providing enforcement mechanisms for child support. *See* TEX. FAM.CODE. ANN. § 157.265. We agree with *W.G.S.* that section 157.265 governs "the rate and manner in which interest applies to child support arrearages" and, therefore, is part of the remedial scheme in the family code designed to encourage child support obligors to make child support payments in a timely fashion. 107 S.W.3d at 630.

Unpaid child support can be reduced to judgment and enforced as a debt, but it is "more properly characterized as an unfulfilled duty ... to the custodial parent." *Patton,* 821 S.W.2d at 145. For parents who fail to fulfill their duty of support, the legislature has enacted provisions, such as section 157.265, that outline the consequences of such a failure. *W.G.S.,* 107 S.W.3d at 630. While section 157.261(a) states that "[a] child support payment not timely made constitutes a final judgment for the amount due and owing, including interest as provided in this chapter," section 157.265 does not define or regulate an obligee's right to collect child support ar-

rearages, but affects only the measure of damages—the rate of prejudgment interest—applicable in the enforcement of the obligee's right to such arrearages. *See* TEX. FAM.CODE ANN. §§ 157.261(a), 157.265; *A.D.,* 73 S.W.3d at 248; *see also Natural Gas Clearinghouse v. Midgard Energy Co.,* 113 S.W.3d 400, 414 n. 13 (Tex.App.-Amarillo 2003, pet. denied) (observing that "statutes relating to damages are remedial" and that prejudgment interest "is simply a form of damages"); JOHN J. SAMPSON ET AL., *supra* § 157, Introductory Cmt., 677 (stating that the child support interest provision is "another remedy [in] the ever-growing arsenal for enforcement of child support orders").

[11] A parent owed delinquent child support but who has not had it confirmed and reduced to a cumulative money judgment thus has only an expectancy that a particular type and rate of prejudgment interest will apply to delinquent child support payments. *See Abell,* 613 S.W.2d at 261; *Trammell,* 129 Tex. 150, 101 S.W.2d at 1014. Indeed, as described above, the legislature has amended the child support interest provision four times since it was first enacted in 1991, changing the amounts and methods of calculating such interest. *W.G.S.* noted that "[t]he 1993 amendment, which raise[d] the statutory interest rate from ten percent to twelve percent, 'reaches back' and applies to arrears dues and owing on September 1, 1991." 107 S.W.3d at 629 (citing Act of May 15, 1993, 73rd Leg., R.S., ch. 150, §§ 1, 3, 1993 Tex. Gen. Laws 302, 302 (amended 1995, 1999, & 2001) (current version at TEX. FAM.CODE ANN. § 157.265)). Likewise, we think the language of the 2001 amendment reaches back and applies to unconfirmed child support arrearages existing before January 1, 2002 that are confirmed and reduced to a money judgment on or after that date. *See* TEX. FAM.

CODE ANN. § 157.265 historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 3(b)(2), 2001 Tex. Gen. Laws 5294, 5295].

After a thorough examination of the statute and the purposes underlying it, we reject *A.B.L.'s* and *Hurd's* conclusion that a retroactive application of section 157.265 would violate a vested right. Rather, we hold that a retroactive construction of section 157.265 does not offend article I, section 16 of the Texas Constitution because section 157.265 is a legislatively-created tool for the enforcement of child support orders. *See* TEX. CONST. art. I, § 16; *A.D.,* 73 S.W.3d at 248.

### 3. Foolish & Absurd Results?

Finally, the OAG points out that because the legislature has chosen for Texas to participate in the federal Social Security Title IV–A and Title IV–D programs, Texas must comply with federal law providing that

> any payment or installment of [ordered child] support ... is (on and after the date it is due) a judgment by operation of law with the full force, effect, and attributes of a judgment of the State, including the ability to be enforced ... and not subject to retroactive modification by such State and in any other State.

42 U.S.C. § 666(a)(9) (West Supp.2004). According to the OAG, a retroactive construction of section 157.265 could cause Texas to be out of compliance with federal law. The OAG argues that "nothing indicates the legislature contemplated, much less intended, to risk the loss of federal funding for Texas's public assistance and child enforcement programs simply by lowering the interest rate on unconfirmed delinquent arrears." The OAG states, "To construe this interest rate change by inferring a retroactive application that poses this risk is unreasonable and should be rejected."

We presume the legislature intended a just and reasonable result in enacting a statute. TEX. GOV'T CODE ANN. § 311.021(3). We will not construe a statute in a manner that will lead to a foolish or absurd result when another alternative is available. *City of Roanoke v. Town of Westlake,* 111 S.W.3d 617, 636 (Tex.App.-Fort Worth 2003, pet. denied).

As mentioned above, section 157.261(a) states that "[a] child support payment not timely made constitutes a final judgment for the amount due and owing, including interest," and section 157.262(a) directs that "in rendering a money judgment, the court may not reduce or modify the amount of child support arrearages." TEX. FAM.CODE ANN. §§ 157.261(a), 157.262(a). These two provisions are incorporated into the Texas Family Code to ensure compliance with federal law. We agree with the OAG that nothing in the 2001 amendment to section 157.265 indicates a legislative intent to opt out of the above-listed federal programs, but we do not believe that a retrospective application of section 157.265's prejudgment interest provision violates the express language in title 42, section 666(a)(9) of the United States Code. 42 U.S.C. § 666(a)(9). The federal statute itself does not speak to or even mention how interest is to be treated, and section 157.265 merely expresses the legislature's intent to apply a different rate of prejudgment interest to delinquent child support payments.

## VI. Conclusion

We hold that, by amending section 157.265, the legislature intended for the six percent rate to apply to "unpaid child support that *became due before* [January 1, 2002] and *for which a court has not confirmed the amount of arrearages and rendered a money judgment,*" and we, like the

trial court, will effectuate that intent. *See* TEX. FAM.CODE ANN. § 157.265 historical note [Act of May 18, 2001, 77th Leg., R.S., ch. 1491, § 3(b), 2001 Tex. Gen. Laws 5294, 5295] (emphasis added); *McIntyre,* 109 S.W.3d at 748. Having addressed each of the OAG's arguments, we overrule its sole issue and affirm the trial court's judgment.